UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
SEAN HALL,

       Plaintiff,

   -against-

L. MARSHALL, SUPERINTENDENT,
WALLKILL CORRECTIONAL
FACILITY,

       Defendant.

------------------------------------------------------x

------------------------------------------------------x
SEAN HALL,

       Plaintiff,

   -against-

THE CITY OF NEW YORK; THE N.Y.C.
DEPARTMENT OF PROBATION;
CYNTHIA R. WONG-ORTIZ, Assistant
General Counsel, N.Y.C. Department of
Probation; KING'S COUNTY DISTRICT
ATTORNEY'S OFFICE; VICTOR P.
BARALL, Assistant District Attorney; and
CYNTHIA LYNCH, Assistant District
Attorney,

       Defendants.

------------------------------------------------------x

## MEMORANDUM AND ORDER

<u>ACTION I</u>
Case No. 04-CV-4953 (FB)(LB)

<u>ACTION II</u>
Case No. 05-CV-0079 (FB)(LB)

*Appearances:*
*For the Plaintiff:*
SEAN HALL, *pro se*
c/o David Jordan
540 East 169th Street, Apt. 1A
Bronx, New York 10456

*For the Defendant in Action I:*
MICHAEL J. KEANE, ESQ.
Office of the Attorney General
120 Broadway
New York, New York 10271

*For the Defendants in Action II:*
ANNA LE NGUYEN, ESQ.
New York City Law Department
100 Church Street
New York, New York 10007

BLOCK, Senior District Judge:

## BACKGROUND

In these consolidated actions, plaintiff, Sean Hall ("Hall"), proceeding *pro se*, claims that various state and city officials have refused to correct inaccurate information in his pre-sentence report ("PSR") and an erroneous notation on his criminal-history report ("rap sheet") that he was arrested for murder.

### A. Action I

Action I was commenced on November 12, 2004, as a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. Hall alleged that the "Present Offense" section of his PSR recited that he "attempted to intentionally cause the death of a person by means of a deadly weapon [and] knowingly acted in a manner likely to be injurious to the physical, mental or moral welfare of children of less th[a]n seventeen years old." Pet. (Action I) at 5-A. Because he had actually been convicted of second-degree assault, second-degree criminal possession of a weapon and second-degree reckless endangerment, Hall alleged that the information in the PSR was "inaccurate," "harmful" and "ambiguous," and "portray[ed] him as a dangerous and extremely violent individual with a depraved indifference for human life." *Id.* He further alleged that, despite his repeated attempts to correct the inaccuracy, the uncorrected PSR was relied on at a parole hearing at which parole was denied because of "the violence [he had] exhibited during the instant offense."

2

*Id.* at 5-Aii.

## B. Action II

Action II was commenced on January 1, 2005, as a suit pursuant to 42 U.S.C. § 1983. Hall sued the City of New York ("City"), the New York City Department of Probation ("DOP") and the Kings County District Attorney's Office ("D.A.'s Office"). He also sued, in both their official and individual capacities, Cynthia Wong-Ortiz ("Wong-Ortiz"), DOP's Assistant General Counsel, and Assistant District Attorneys Victor P. Barall ("Barall") and Cynthia Lynch ("Lynch"). While Action II, like Action I, focuses on the alleged inaccuracy in Hall's PSR, his complaint also alleged that his "rap sheet reflects [that] he was arrested for second-degree murder [and] was also left to stand incorrect." Compl. (Action II) ¶ 14.

Hall alleged that DOP prepared the PSR, that Lynch and Barall opposed his requests to have the inaccuracy corrected at sentencing and on direct appeal, that Wong-Ortiz opposed Hall's subsequent motion to have the sentencing court order the PSR corrected, and that the D.A.'s Office opposed correction in connection with the parole hearing. He further alleged that the actions of these defendants were "deliberately indifferent to the rights of Citizens to be free from unlawful and unconstitutional deprivation of liberty." Compl. (Action II) ¶ 35. With respect to the City, Hall alleged that it "directly caused [] constitutional violations by a practice, policy and custom of failing to properly train, supervise and monitor [its officers'] conduct and practices . . . to effectuate deprivation of liberty by preparing harmfully inaccurate and ambiguously phrased reports," *id.* ¶ 30, and that it "has [been] and continues to be deliberately indifferent to the

3

rights of Citizens to be free from unconstitutional acts and practices which result in deliberate constitutional violations." *Id.* ¶ 31.

Based on these allegations, Hall seeks damages from all defendants in Action II. In addition, he sought an injunction ordering (1) that his PSR be corrected and (2) that his "arrest information that was made in error be either expunged or sealed." *Id.* ¶ 29.

### C. December 20, 2005 Decision

In a Memorandum and Order issued December 20, 2005, the Court construed Hall's petition in Action I as a complaint seeking relief under § 1983. *See Hall v. Marshall*, 2005 WL 3479880, at *1 (E.D.N.Y. Dec. 20, 2005) (citing *Wilkinson v. Dotson*, 544 U.S. 74 (2005)). The Court also *sua sponte* dismissed (1) the claims for monetary relief against the individual defendants in their official capacities as barred by the Eleventh Amendment, and (2) all claims against defendants Victor P. Barall ("Barall") and Cynthia Lynch ("Lynch") as barred by the doctrine of prosecutorial immunity. *See id.* at *1-*2.

### D. Hall's First Motion for Preliminary Injunctive Relief

On March 1, 2006, Hall filed a motion for a preliminary injunction (1) ordering Marshall to collect all copies of Hall's PSR (and documents derived therefrom) and turn them over to DOP, (2) ordering DOP to turn over the copies to the Court "for safekeeping pending final judgment, and (3) sealing Hall's "arrest information" pending final judgment. Mot. for a Prelim. Inj. (Mar. 1, 2006) ¶¶ 1-4.

### E. May 3, 2006 Stipulation

In a stipulation "so ordered" by the Court on May 3, 2006, DOP agreed to correct the PSR by replacing the "Present Offense" section with a statement listing the

offenses of which Hall was convicted, and by adding a notation that Hall disputed the complaining witness's version of events. In exchange, Hall agreed to dismiss with prejudice his claims for injunctive relief regarding the PSR, and to withdraw his March 1st motion for a preliminary injunction.

## F. Hall's Amended Complaint in Action I

On June 12, 2006, after Marshall had filed an amended answer in Action I, Hall filed an amended complaint in that action. Since Hall is not entitled to an amendment as of right, *see* Fed. R. Civ. P. 15(a), the Court's construes the amended complaint as a motion for leave to amend.

The amended complaint named as additional defendants the State of New York ("State"), the New York State Division of Criminal Justice Services ("DCJS"),[1] the New York State Department of Correctional Services ("DOCS"), and Rosemary Riker, the Inmate Records Coordinator of Wallkill Correctional Facility ("Riker"). Hall alleged that his rap sheet, which reflects an arrest for second-degree murder on July 9, 1998, "is erroneous and made in error because there was no murder committed in connection with his offense." Am. Compl. (Action I), ¶ 10. He further alleged that DCJS "continues to maintain the erroneous arrest information," and that "[l]aw enforcement [o]fficials can access this erroneous information . . . [w]hich can very well place Plaintiff's life in danger when he is approached by law enforcement [o]fficers." *Id.* ¶ 11-12.

---

[1] Hall erroneously refers to DCJS as the *Department* of Criminal Justice Services. In addition, the Court notes that, although not mentioned by name in Hall's pleadings, Denise E. O'Donnell ("O'Donnell") is the acting head of DCJS. *See* http://criminaljustice.state.ny.us/welcome/welcome.htm (last visited Mar. 5, 2007).

The amended complaint also elaborated on the allegations regarding the PSR. First, Hall alleged that the DOCS and Riker "were custodians of Plaintiff's prison records," that "[t]heir continued maintenance of inaccurate records resulted in the inaccurate information being forwarded to the State Parole Board," that the "State Parole Board then used and relied upon the inaccurate information in Plaintiff's parole hearing," and that "[a]s a result, Plaintiff was detained the maximum period permissible." *Id.* ¶¶ 18-19, 28. He further alleged that the State "directly caused [] constitutional violations by a practice, policy and custom of failing to properly train, supervise and monitor [its officers'] conduct and practices . . . to effectuate deprivation of liberty by preparing harmfully inaccurate and ambiguously phrased reports." *Id.* ¶ 34. The amended complaint contains no allegations regarding Marshall's involvement in the alleged constitutional violations.

Based on these allegations, Hall seeks damages from all defendants in Action I. In addition, he seeks an injunction ordering that his rap sheet "be corrected, sealed or expunged to prevent that information from being accessed by law enforcement and posing a potential threat to [his] life. *Id.* ¶ 33.

## G. Hall's Second Motion for Preliminary Injunctive Relief

On August 14, 2006, Hall filed a second motion for a preliminary injunction, in which he seeks an order, in respect to his rap sheet, (1) directing the City to provide DCJS "with the documentation necessary to correct Plaintiff's erroneous arrest information . . . , or, in the alternative [to] seal the erroneous arrest information," and (2) sealing the allegedly erroneous arrest information "pending final disposition in this case." Mot. for a Prelim. Inj. (Aug. 18, 2006) ¶¶ 1-2. In his supporting submissions, Hall alleged that "[o]n

July 25, 2006, Plaintiff applied for a tow truck driver['] license with the New York City Department of Consumer Affairs and was ordered to explain the erroneous arrest information," Aff. in Supp. of Mot. for a Prelim. Inj. ¶ 3; he further alleged that "[t]he erroneous arrest information can be corrected by [DCJS] if the City of New York would submit documentation reflecting the arrest information was made in error, however, the City of New York refuses to do so." *Id.* ¶ 5. In support of these allegations, Hall submitted a document generated by DCJS to explain the procedures someone seeking correction of criminal records must follow. As pertinent here, those instructions provide that "[t]o modify arrest data . . ., YOU must contact the arresting agency. DCJS REQUIRES written notification from the ARRESTING AGENCY to correct this information." *Id.*, Ex. A.

## H. Remaining Claims

In light of the Court's December 20, 2005 Memorandum and Order and the parties' May 3, 2006 stipulation, the following claims remain:

- Hall's claims for monetary relief with respect to both the PSR and the rap sheet.

- Hall's claims for injunctive relief with respect to the rap sheet.

## I. Pending Motions

In addition to Hall's construed motion for leave to amend the complaint in Action I and his motion for a preliminary injunction regarding the rap sheet, now pending before the Court are motions by the defendants in both actions seeking dismissal of the claims against them. In Action I, Marshall moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds (1) that he was not personally

involved in any constitutional violation, (2) that Hall has no constitutional right to have correct information in his state records, and (3) that a § 1983 claim is not a proper basis for challenging a denial of parole. Marshall also opposes Hall's proposed addition of defendants in Action I, on the ground of futility.

In Action II, all defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). With respect to Hall's claims regarding his PSR, they argue (1) that an inaccurate PSR does not implicate any interest protected by the Due Process Clause, and (2) that the inaccurate information did not result in a due-process violation because it was not relied on in denying Hall parole. With respect to the claims regarding the rap sheet, defendants do not dispute that the rap sheet erroneously recites that Hall was arrested for murder; rather, all of the defendants argue (1) that Hall's claims are barred by *res judicata*, collateral estoppel and the statute of limitations, (2) that Hall has not alleged any damages resulting from the inaccurate rap sheet, and (3) that correcting the error on the rap sheet would destroy the record's authenticity. In addition, Wong-Ortiz argues that she had no personal involvement in the preparation of Hall's arrest information and that, in any event, she is protected by the doctrines of absolute and qualified immunity. The City argues that Hall has failed to allege sufficient facts to support a claim for municipal liability. Finally, DOP and the D.A.'s Office argue that they are not suable entities.

## DISCUSSION

### A. Overview

Mindful that, at this stage of the proceedings, Hall's factual allegations must be taken as true, *see Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999), and liberally construed "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), the Court construes Hall's submissions as advancing two claims. First, he claims that his PSR contained inaccurate information regarding the nature of his offense that was relied on as a basis for denying him parole;[2] for that, he seeks monetary relief against all defendants in both Action I and Action II, his claims for injunctive relief regarding the PSR having been resolved by the May 3, 2006 stipulation. Second, he claims that his rap sheet erroneously recites that he was arrested for murder, that as a result, his prospective interactions with potential employers and governmental actors will be adversely affected, and that, absent a correction, he will be denied a state-issued tow-truck driver's license; for that, he seeks monetary and injunctive relief against the State, DOCS and DCJS, as well as Marshall and Riker, in both their official and individual capacities. In addition, the Court construes Hall's second motion for a preliminary injunction, regarding his rap sheet, as also seeking permanent injunctive relief from the City.

At bottom, Hall's claims stem from the premise that official records regarding one's criminal history should be accurate. The premise is not an unreasonable one, and its

---

[2]Although the defendants in Action II argue that the Parole Board did not rely on the PSR in denying Hall parole, Hall has alleged that they did; at this stage of the proceedings, that is sufficient.

importance is undeniable, especially where, as here, one of those records falsely states that the plaintiff was arrested for murder; indeed, district courts have the inherent equitable authority to order expungement of *federal* criminal records, *see United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1997), and have used that authority to expunge errors in such records. *See, e.g., Doe v. Immigration & Customs Enforcement*, 2004 WL 1469464 (S.D.N.Y. 2004) (Baer, J.) (citing *Schnitzer* and expunging erroneous notation that plaintiff had been arrested and detained by immigration officials). Recognizing the same interest in accurate *state* records, New York law provides an administrative procedure by which anyone can "challenge the completeness or accuracy of [his or her] criminal history record information" by filing a "Statement of Challenge" with DCJS, 9 N.Y.C.C.R.R. § 6050.2; if the person is unsatisfied with DCJS's initial response, he or she may administratively appeal to the Commissioner of DCJS, *see id.* § 6050.3, and, if still unsatisfied, seek judicial review. *See* N.Y. C.P.L.R. Art. 78, Practice Commentary C7801:1 ("[A]rticle 78 proceedings are used to challenge action (or inaction) by agencies and officers of state and local government"); *Groves v. State Univ. of N.Y. at Albany*, 707 N.Y.S.2d 261 (3d Dep't 2000) (applying Article 78 to DCJS).

This case involves state, not federal, criminal records. And although state law might afford Hall a remedy, a state-law claim would be insufficient to invoke this Court's jurisdiction; for this Court to award the relief Hall seeks, he must present a claim based on federal law. In that regard, he contends that the defendants' refusal to correct the alleged accuracies in his PSR and rap sheet violated his right to due process, as guaranteed by the Fourteenth Amendment.

One of the fundamental elements of a due-process claim is the existence of a cognizable interest in liberty or property: "If the interest [a plaintiff] asserts is not of a constitutional dimension, i.e., not a protected property or liberty interest, then [his] arguments must fail." *Donato v. Plainview-Old Bethpage Cent. School Dist.*, 96 F.3d 623, 628-29 (2d Cir. 1996).

Even palpably false statements by a governmental actor will not support a § 1983 claim if the only injury is to the plaintiff's reputation. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) ("[A]ny harm or injury to [a reputational] interest, even where . . . inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law[.]"); *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."). Governmental defamation is actionable only if it falls within the so-called "stigma plus" doctrine. *See Sadallah*, 383 F.3d at 38. "To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Id.* With regard to the second element – the "plus" – outside the loss of government employment, "it is not entirely clear what the 'plus' is." *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989).

With those standards in mind, the Court now addresses Hall's claims regarding his PSR and rap sheet.

11

## B. The PSR

By alleging that his PSR contained a description of his offense that was factually false and damaging to his reputation, Hall has adequately alleged a "stigma." And despite the jurisprudential uncertainty regarding the "plus" prong, the Court concludes that Hall's allegation that he was denied parole based on an inaccurate PSR qualifies as a "plus." *Cf. Paul v. Davis*, 424 U.S. 693, 711 (1976) ("Before the State could alter the status of a parolee because of alleged violations of the[] conditions [of parole], we held [in *Morrissey v. Brewer*, 408 U.S. 471 (1972),] that the Fourteenth Amendment's guarantee of due process of law required certain procedural safeguards."). In other words, even though New York State inmates "have no liberty interest in parole," *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001), the denial of parole certainly qualifies as a "material state-imposed burden or state-imposed alteration of [Hall's] status or rights." *Sadallah*, 383 F.3d at 38.

Although Hall's claim regarding his PSR satisfies the requirements for a "stigma plus" claim, most of the numerous defendants he has sued cannot be liable for monetary damages on that claim. First, DOP and the D.A.'s Office are nonsuable entities. *See Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 206 (S.D.N.Y. 2004) (DOP); *Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005) (D.A.'s Office). Second, Hall does not allege that either Marshall or Wong-Ortiz was personally responsible for the inaccuracies in the PSR: "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of*

12

*Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

In addition, the Court agrees with Wong-Ortiz's contention that even if she had been personally involved in a constitutional violation, she would be protected from Hall's claims for damages by the doctrines of absolute and qualified immunity.[3] In regard to the former, the Second Circuit has held that "New York probation officers in preparing and furnishing [presentence] reports to the courts, like federal probation officers, are entitled to absolute immunity from suits for damages." *Hili v. Sciarrotta*, 140 F.3d 210, 214 (2d Cir. 1998). While Hall alleges only that Wong-Ortiz simply opposed his motion to have the sentencing court correct his PSR, the Court concludes that the rationale for granting absolute immunity to probation officers – namely, "the desirability of having [PSRs] provide the courts with all information that may be relevant to sentencing," *id.* at 213 – justifies extending her the same immunity.

As for qualified immunity, governmental actors are entitled to qualified immunity from claims for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a constitutional right to be clearly established, there must be binding precedent recognizing it: "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir.

---

[3]Unlike Wong-Ortiz, Marshall does not claim immunity. Since Marshall's lack of personal involvement precludes Hall's claim against him regarding the PSR, the Court need not decide whether Marshall would be protected by either absolute or qualified immunity.

2004). Furthermore, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Although the Court has concluded that Hall's claim regarding his PSR qualifies as a "stigma plus," neither the Second Circuit nor the Supreme Court has held that the refusal to correct criminal history records rises to the level of a constitutional violation.[4] Moreover, even assuming that a generalized right to accurate records existed, a reasonable person in Wong-Ortiz' position would have no reason to believe that merely opposing correction would violate that right. For these reasons, Wong-Ortiz would, at the very least, be entitled to qualified immunity.

Hall's claim for damages against the City stands on a different footing. Municipalities are liable for damages under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality's failure to train or supervise its officers can rise to the level of an actionable policy or custom where it amounts to "deliberate indifference" to the constitutional rights of its citizens. *City of Canton v. Harris*, 489 U.S. 378,

---

[4] In *Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979), the Fourth Circuit held that "a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." *Id.* at 201. In an unpublished decision, the Second Circuit noted that it "has not followed *Paine v. Baker* in recognizing that a prisoner has a constitutional right to have incorrect information relied upon in a parole hearing expunged from his or her file." *LaBounty v. Coombe*, 2000 WL 287726, at *2 (2d Cir. Mar. 16, 2000) (unpublished).

388 (1989); *see also Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) ("A municipality may be liable under § 1983 . . . where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference."). The City argues that Hall has not adequately alleged a claim for municipal liability. The Court disagrees.

In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court held that *Monell* claims are not subject to a heightened pleading standard and need "include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 168 (quoting Fed. R. Civ. P. 8.(a)(2)). By specifically alleging (1) that the City had "a practice, policy and custom of failing to properly train, supervise and monitor [its officers'] conduct and practices . . . to effectuate deprivation of liberty by preparing harmfully inaccurate and ambiguously phrased reports," Compl. (Action II) ¶ 30, (2) that the policy resulted in an inaccurate PSR, which, despite Hall's objections, remained inaccurate at the time he was considered for parole, and (3) that, through its failure to train, the City "has [been] and continues to be deliberately indifferent to the rights of Citizens to be free from unconstitutional acts and practices which result in deliberate constitutional violations," *id.* ¶ 35, Hall has satisfied that standard. In addition, apart from Hall's allegations that the City failed to train and supervise its employees, the Court liberally construes Hall's submissions to allege that the City maintains a custom or policy of refusing to correct PSRs even after errors are brought to its attention; this, too, is a sound basis for municipal liability. *See Nesbitt v. County of Nassau*, 2006 WL 3511377, *4 (E.D.N.Y. Dec. 6, 2006) (holding that allegation of county officials' "active inattention to or knowing acquiescence in misconduct by law enforcement

personnel," which led to an unlawful arrest, assault and search, was sufficient to allege municipal liability under *Leatherman*).

With regard to the defendants that Hall seeks to add in Action I, the Eleventh Amendment precludes Hall from pursuing a claim for damages against the State, DOCS and DCJS. *See Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("An official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself."). It also precludes claims for damages against Riker in her official capacity, *see Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); while it would not bar a damages claim against her in her individual capacity, *see Hefer v. Melo*, 502 U.S. 21, 31 (1991), Hall has not alleged that she was personally responsible for the alleged inaccuracies in his PSR. Thus, with respect to the PSR claim, Hall's proposed addition of defendants would be futile.

In sum, Hall adequately alleges a claim for damages based on the inaccuracies in his PSR; however, that claim is viable only against the City.

## C. The Rap Sheet

Hall's allegation that his rap sheet erroneously recites that he was arrested for murder obviously also qualifies as a "stigma." With regard to his claim that the error will adversely impact his interactions with law enforcement and prospective employers, such harms are exactly the type of harms that the Supreme Court in *Paul* held insufficient to constitute a "plus":

> [The plaintiff's] complaint asserted that [his] "active shoplifter" designation [on a flyer distributed by local authorities] would

> inhibit him from entering business establishments for fear of
> being suspected of shoplifting and possibly apprehended, and
> would seriously impair his future employment opportunities.

424 U.S. at 697. Accepting that "such consequences may flow from the flyer in question,"

the Court nevertheless held that the "defamatory publications, however seriously they may

have harmed [the plaintiff's] reputation, did not deprive him of any 'liberty' or 'property'

interests protected by the Due Process Clause." 424 U.S. at 712.

By contrast, the Court concludes that denial of a state-issued tow-truck

license would qualify as a "plus." *See Drake v. Laboratory Corp. of Am. Holdings*, 290 F.

Supp. 2d 352, 362 (E.D.N.Y. 2003) ("In *Neu* . . . , the [circuit] court suggested that

interference with one's license to practice a profession might constitute a legal right or

status sufficient to satisfy a stigma plus claim." (citing *Neu*, 869 F.2d at 670 n.3)); *cf. Paul*,

424 U.S. at 711 ("The Court held [in *Bell v. Burson*, 402 U.S. 535 (1971),] that the State could

not withdraw th[e] right [to operate a motor vehicle] with giving petitioner due process.").

Hall, however, has not alleged that he has actually been denied such a license; in the

absence of any current injury, Hall cannot maintain any claims for damages relating to the

rap sheet.

However, since Hall's pleadings, liberally construed, allege that the City's

refusal to provide documentation to DCJS to allow the rap sheet to be corrected is

preventing him from obtaining a tow-truck license, a mandatory injunction ordering the

correction is an appropriate remedy to prevent Hall from suffering a constitutionally

cognizable "plus." *See Swift & Co. v. United States*, 276 U.S. 311, 326 (1928) ("[A]n injunction

may issue to prevent future wrong, although no right has yet been violated.").

17

While Hall's allegations are sufficient to entitle him to seek a *permanent* injunction ordering the correction of his rap sheet, he has not met the burden for entitlement to *preliminary* injunctive relief. "In most cases, a party seeking to obtain a preliminary injunction must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly in the movant's favor." *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996). Where, however, the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the standard is higher: "[I]n addition to demonstrating irreparable harm, '[t]he moving party must make a clear or substantial showing of a likelihood of success' on the merits." *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (quoting *Jolly*, 76 F.3d at 473). This heightened standard also applies "when a preliminary injunction is sought against government." *Id.* Hall's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals.").

The Court must next determine which defendants could appropriately be enjoined to correct Hall's rap sheet. As nonsuable entities, DOP and the D.A.'s office are obviously not proper defendants.

Regarding the individual defendants, neither absolute nor qualified

18

immunity is a defense to a claim for injunctive relief. *See Hili*, 140 F.3d at 215 (absolute immunity); *African Trade & Information Ctr. v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (qualified immunity). Similarly, "[p]ersonal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity." *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908); *accord Marinaccio v. Boardman*, 2005 WL 928631, at *9 (N.D.N.Y. Apr. 19, 2005) ("District courts in the Second Circuit have [held] that the personal involvement requirement does *not* apply to bar actions . . . for injunctive relief[.]" (collecting cases)). The officer must, however, "'by virtue of his office, ha[ve] some connection' with the unconstitutional act or conduct." *Luckey*, 860 F.2d at 1015-16 (quoting *Young*, 209 U.S. at 157). Hall does not allege that either Marshall or Wong-Ortiz has the authority to unilaterally correct his rap sheet; therefore, his claim for injunctive relief cannot proceed against those defendants.

With respect to the City, the Court construes Hall's allegation that the City refuses to correct his rap sheet as alleging that it has the authority to do so. The City is therefore a proper defendant for injunctive relief. The City argues, however, that Hall's rap sheet claim is barred by the doctrines of *res judicata* and collateral estoppel, as well as by the applicable statute of limitations. The Court finds neither argument persuasive.

Regarding *res judicata* and collateral estoppel, the City relies on the Court's description of the arrest record in a prior action between Hall and the City as a "mere data entry error." *Hall v. City of New York, et al.* ("*Hall I*"), Case No. 00-CV-1890, 4 n.3 (E.D.N.Y. Jul. 26, 2001). *Hall I*, however, involved a claim for false arrest, which called into question

19

the validity of Hall's actual arrest, not the accuracy of the notation of the arrest on his rap sheet; therefore, it is not *res judicata* as to the nature of the error. *See King v. Fox*, 418 F.3d 121, 131 (2d Cir. 2005) ("A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first." (citation and internal quotation marks omitted)). By the same token, collateral estoppel does not apply because the Court's description of the error was offered simply as background, not as an adjudication of an "issue . . . necessary to the resolution of the prior action." *Id.* at 130.

Regarding the statute of limitations, the City points out that the alleged inaccuracy was placed on Hall's rap sheet in 1998. While that is certainly true, it is not dispositive. As previously noted, the inaccuracy in the rap sheet gave rise to a "stigma plus" claim only once Hall was confronted with the possible denial of a tow-truck license, which did not occur until August 2, 2006. The complaint in Action II (which first referenced the error on the rap sheet) and the amended complaint in Action I (which first sought relief based on the error) were both filed *before* that date, and Hall's second motion for a preliminary injunction (which first sought relief from the City based on the error) was filed less than three weeks afterwards. Hall's claim regarding his rap sheet is, therefore, well within the three-year statute of limitations applicable to § 1983 claims. *See Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) ("For § 1983 actions arising in New York, the statute of limitations is three years.").

Finally, with regard to the defendants that Hall seeks to add in Action I, the

Eleventh Amendment precludes Hall from pursuing a claim for injunctive relief against the State and DOCS. *See McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) ("Th[e Eleventh] Amendment bars suits that seek either money damages . . . or injunctive relief." (citations omitted)). It also precludes claims for damages against Riker in her official capacity. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). It would not bar a claim for injunctive relief against Riker, *see Dube v. State University of New York*, 900 F.2d 587, 595 (2d Cir. 1990) ("[A] state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment bar."); however, as Hall does not allege that she has the authority to correct his rap sheet, it would be futile to add her as a defendant to the rap sheet claim.

Like the State and DOCS, DCJS itself is shielded by the Eleventh Amendment; however, under *Dube*, Hall could seek injunctive relief against its officers. Since Hall alleges that DCJS has the authority to correct his rap sheet, the Court will allow Hall to add O'Donnell, DCJS's Acting Commissioner, in her official capacity, so that he may pursue a claim for injunctive relief regarding his rap sheet against her.

In sum, Hall adequately alleges a claim for injunctive relief based on the error in his rap sheet. The proper defendants on that claim are the City and O'Donnell.

## CONCLUSION

1.     Hall's motion for preliminary injunctive relief is denied.

2.     Hall's motion to amend the complaint in Action I is granted insofar as it seeks to add allegations regarding his rap sheet and to elaborate on the allegations regarding his PSR. In addition, O'Donnell, in her official capacity, is added as a defendant in Action I; Hall's motion to add additional defendants is denied.

21

3.     All claims against Marshall, Wong-Ortiz, DOP and the D.A.'s Office are dismissed.

4.     The case shall proceed on (1) Hall's claim for monetary relief regarding his PSR, with the City as the sole defendant, and (2) Hall's claim for permanent injunctive relief regarding his rap sheet, with the City and O'Donnell as defendants.

5.     The Attorney General's Office shall, within ten (10) days, advise the Court in writing whether it will require formal service of process on O'Donnell in her official capacity; if so, the Court will order the Marshals to serve her with a summons and a copy of the amended complaint in Action I.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 6, 2007